UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

MECCA ALLAH SHAKUR,
        Plaintiff,

v.

PRISONER
CASE NO. 3:12-cv-984(SRU)

ANTHONY BRUNO, et al.,
        Defendants.

### INITIAL REVIEW ORDER

Mecca Allah Shakur, currently incarcerated at Corrigan Correctional Institution in Suffield, Connecticut ("Corrigan"), has filed a civil complaint *pro se.* He sues Reverend Anthony Bruno, Director of Food and Nutritional Services Mike Bibens, Administrative Remedy Coordinators Meigs and Lewis, Chaplin Mack Elder, Correctional Officer Bulkanowski, Lieutenants White and Ruggiero and Nurses Kim, Yvonne and Jeanine.

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id*. This requirement applies both where the inmate has paid the filing fee and where he is proceeding *in forma pauperis*. *See Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (per curiam). Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,' " does not meet the facial plausibility standard.  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).  Although courts still have an obligation to liberally construe a *pro se* complaint, *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), the complaint must include sufficient factual allegations to meet the standard of facial plausibility.

      The plaintiff is a member of an organization or religion called the Nation of Gods and Earths.  He alleges that from August 2009 until March 2012, during his confinement at Corrigan, defendants Bruno, Bibens, Meigs, Lewis, Elder, Bulkanowski, White and Ruggiero denied him his right to practice his religion by refusing to permit him to engage in group religious services, disciplining him for using an item of his faith and denying his requests for a vegetarian diet, Halal foods, religious books and religious articles of his faith, including a crown which is similar to a kufi and sacred restoration oils.  The plaintiff also claims that the defendants have violated his equal protection rights by permitting other faiths to have separate congregate religious ceremonies and services and donations of foods from groups outside of prison for those ceremonies.  Nurses Yvonne, Jeanine and Kim were deliberately indifferent to his mental health and medical needs from December 5, 2010 to December 7, 2010.  The plaintiff sues the defendants in their official and individual capacities for declaratory and injunctive relief and monetary damages.

### III. Discussion

The plaintiff has asserted claims under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc.  The court concludes that the ADA and Fifth and Eighth Amendment claims should be dismissed.

#### A. Section 1983 Claims

In order to state a claim for relief under section 1983 of the Civil Rights Act, the plaintiff must satisfy a two-part test.  First, he must allege facts demonstrating that defendant acted under color of state law.  Second, he must allege facts demonstrating that he has been deprived of a constitutionally or federally protected right.  *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982); *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir. 1986).

##### 1. Fifth and Fourteenth Amendments

The plaintiff alleges that defendants violated his Fifth and Fourteenth Amendment equal protection and due process rights.  The Fifth Amendment applies to the federal government, not to the states.  *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (holding Fifth Amendment's Due Process Clause protects citizens against only federal government actors, not State officials); *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 466–67 (S.D.N.Y. 2009) (holding that any due process claim against the city was "properly brought under the Fourteenth Amendment, not the Fifth Amendment").  Because the plaintiff has not alleged any deprivation of his rights by the federal government, any Fifth Amendment claims against the defendants are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

In the introduction to his complaint, the plaintiff generally asserts that the defendants

have violated his Fourteenth Amendment due process rights.  The body of the complaint, however, contains no factual allegations that plausibly support a claim that any of the defendants' violated his Fourteenth Amendment due process rights.  Accordingly, all Fourteenth Amendment due process claims are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

The plaintiff has alleged that defendants Bruno, Bibens, Meigs, Lewis, Elder, Bulkanowski, White and Ruggiero have discriminated against him as a member of the Nation of Gods and Earths and have denied him the rights afforded to prisoners of other faiths to freely practice their religions in violation of the Equal Protection Clause of the Fourteenth Amendment.  The court concludes that the plaintiff has stated a plausible equal protection challenge and this Fourteenth Amendment claim should proceed.

### 2. Eighth Amendment

On December 5, 2010, Lieutenant White ordered that the plaintiff be placed in a restrictive housing unit.  As a routine matter, the plaintiff was taken to the medical unit for a mental health evaluation prior to his placement in the restrictive housing unit.  Upon his arrival at the medical unit, Nurse Yvonne asked the plaintiff if he was going to try to hurt himself.  The plaintiff refused to answer this question because Nurse Yvonne was not a mental health worker.  Nurse Yvonne, after speaking with a mental health physician, transferred the plaintiff to inpatient unit in the medical department and placed him on suicide watch.

The plaintiff alleges that he suffers from several mental health conditions and that during his confinement in the inpatient medical unit he punched the wall of the cell because he was angry and frustrated.  The plaintiff's hand became swollen after punching the wall.   The plaintiff contends that Nurses Yvonne, Kim and Jeanine refused to look at or treat his swollen hand for

two days.

Deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment.  See *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  To prevail on such a claim, a plaintiff must provide evidence of sufficiently harmful acts or omissions and intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel.  *See id.* at 104-06.  Mere negligence will not support a section 1983 claim; "the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law."  *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003).  Thus, "not every lapse in prison medical care will rise to the level of a constitutional violation," *id.*; rather, the conduct complained of must "shock the conscience" or constitute a "barbarous act."  *McCloud v. Delaney*, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citing *United States ex rel. Hyde v. McGinnis*, 429 F.2d 864 (2d Cir. 1970)).  Mere disagreement with prison officials about what constitutes appropriate care does not state a claim cognizable under the Eighth Amendment.  "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."  *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

There are both subjective and objective components to the deliberate indifference standard.  *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied sub nom. Foote v. Hathaway*, 513 U.S. 1154 (1995).  Objectively, the alleged deprivation must be "sufficiently serious."  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  The condition must produce death, degeneration or extreme pain.  *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).  Subjectively, the defendant must have been actually aware of a substantial risk that the inmate

would suffer serious harm as a result of his actions or inactions.  *See Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006).  Thus, the fact that a prison official did not alleviate a significant risk that he should have but did not perceive does not constitute deliberate indifference.  *See Farmer v. Brennan*, 511 U.S. 825, 838 (1994).

The Second Circuit has identified several factors that are highly relevant to the inquiry into the seriousness of a medical condition.  For example, a medical condition significantly affecting the inmate's daily activities or causing chronic and significant pain or the existence of an injury a reasonable doctor would find important constitutes a serious medical need.  *See Chance*, 143 F.3d at 702.  In addition, where the denial of treatment causes plaintiff to suffer a permanent loss or life-long handicap, the medical need is considered serious.  *See Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000).

The plaintiff alleges that he was not suicidal on December 5, 2010 or any time thereafter.  He said as much to the mental health professional on December 7, 2010.  The plaintiff does not allege that he sought mental health treatment for any specific condition during his confinement in the medical unit from December 5, 2010 to December 7, 2010.  Rather, the plaintiff contends that he was not suicidal and sought to be examined by a mental health worker so that he could be cleared to go to restrictive housing.  Thus, the plaintiff has failed to allege that he suffered from a serious mental health condition during his confinement in the in-patient medical unit.

In addition, the plaintiff's swollen hand does not constitute a serious medical condition.  *See Barrett v. Goldstein*, 2009 WL 1873647, **2-3 (E.D.N.Y. June 29, 2009 (inmate's broken finger and damaged tendon which were not treated for four days did not constitute serious medical condition); *Jones v. Lindblad*, No. 05-CV-814S, 2009 WL 804155, *7 (W.D.N.Y. Mar.

25, 2009 (inmate's injuries including painful area behind one ear, small cut and swollen area on top of head, cut lower lip, swollen knee and ankle and bruised shoulder did not constitute serious medical conditions sufficient to meet objective component of Eighth Amendment standard); *Bonner v. New York City Police Dep't*, No. 99 Civ. 3207 (AGS), 2000 WL 1171150 (S.D.N.Y. Aug. 17, 2000) (claim that plaintiff suffered from swollen hand and finger that would not bend properly did not constitute serious medical condition).

The plaintiff alleges that Nurse Jeanine offered him medication on December 6, 2010, but he refused to take the medication. Later that day, a mental health worker advised the plaintiff to take the medication as it would alleviate the swelling in his hand. On December 7, 2010, a mental health physician evaluated the plaintiff and cleared him to be transferred to the restrictive housing unit. Correctional staff escorted the plaintiff to the restrictive housing unit later that day. On or about December 9, 2010, the plaintiff's hand was x-rayed.

The alleged refusal of Nurses Yvonne, Kim and Jeanine to evaluate the plaintiff's swollen hand for approximately two days does not constitute deliberate indifference to a serious medical need. Any claims against Nurses Yvonne, Kim and Jeanine for the denial of mental health or medical treatment fail to state a claim upon which relief may be granted and are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### 3. First Amendment Claims

The court concludes that the allegations in the complaint state plausible section 1983 claim that defendants Bruno, Bibens, Meigs, Lewis, Elder, Bulkanowski, White and Ruggiero violated the plaintiff's First Amendment right to practice his religion. The case will proceed on this claim.

B.     **ADA Claims**

As previously stated, the plaintiff alleges that he suffers from several mental health conditions.  The plaintiff claims that on December 5, 2010, Nurse Yvonne violated his rights under the ADA when she attempted to determine if he was suicidal prior to transferring him to the restrictive housing unit.[1]  The plaintiff contends that Nurse Yvonne is not a mental health professional and has no mental health training or qualifications.

The plaintiff concedes that a mental health worker came to see him the day after he was placed in the in-patient unit on suicide watch.  Furthermore, when a mental health physician came to see the plaintiff on December 7, 2010, the plaintiff informed the physician that he was not then and had not been suicidal.  The physician cleared him for transfer to the restrictive housing unit.  The plaintiff alleges that a mental health worker continued to check on him during his confinement in the restrictive housing unit.

Title II of the ADA prohibits exclusion from or denial of the "benefits of the services, programs or activities of a public entity" or discrimination by a public entity on the basis of an individual's disability.  *See* 42 U.S.C. § 12132.  The Supreme Court has held that this provision applies to state prisoners.  *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998) ("[T]he plain text of Title II of the ADA unambiguously extends to state prison inmates.").  The ADA defines the term "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or

---

[1]     The plaintiff does not claim that the injury to his hand constituted a disability within the meaning of the ADA.  A minor and transitory impairment lasting or expected to last six months or less is not considered to be a disability within the meaning of 42 U.S.C. § 12102(1). *See* 42 U.S.C. § 12012(3)(B).

(C) being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102(1)(A)-(C).[2]

The State of Connecticut and the Connecticut Department of Correction are public entities within the meaning of the ADA. *See* 42 U.S.C. § 12131(1)(A)(defining public entity to include any state or local government); *Yeskey*, 524 U.S. at 209-10 ("State prisons fall squarely within [Title II's] statutory definition of 'public entity,' which includes 'any department, agency . . ., or other instrumentality of a State . . . or local government.'") (quoting 42 U.S.C. § 12131(1)(B)). In addition, the Second Circuit has recognized that a valid ADA claim may be stated against a state official in his official capacity. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 289 (2d Cir. 2003). Title II of the ADA, however, does not "provide[] for individual capacity suits against state officials." *See Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001).

The court concludes that the plaintiff has not stated a claim against Nurse Yvonne for a violation of his rights under the ADA. The plaintiff concedes that the evaluation of the mental health of an inmate prior to sending him or her to restrictive housing was routine. Although the

---

[2] Paragraph (3) of 42 U.S.C. § 12102 provides in pertinent part:

> (A) An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.
> (B) Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

plaintiff claims that he suffered from several mental health conditions on December 6, 2010, these allegations, without more, do not plausibly suggest that his mental health conditions substantially limited his major life activities.  The plaintiff does not claim to have been suicidal or in need of mental health treatment during the three-day period in early December 2010.  He concedes that he only punched the wall of the cell because he was angry and frustrated.  Thus, the plaintiff does not allege that he suffered from a mental health condition or disability warranting treatment during his three-day confinement in the in-patient unit.

Even if the court assumes that Nurse Yvonne regarded him as having a mental impairment because he would not admit or deny that he was feeling suicidal, the plaintiff has not alleged that Nurse Yvonne discriminated against him, denied him mental health treatment or deprived him of access to a service, program or activity because of his perceived impairment.  During the evening of December 5, 2010, Nurse Yvonne informed the plaintiff that she was handling mental health complaints because there were no mental health workers at the facility at that time.  She also informed the plaintiff that she could call a mental health physician if an questions or issues arose.  The plaintiff did not ask for mental health treatment from Nurse Yvonne.  Furthermore, the plaintiff acknowledges that a mental health worker and/or worker evaluated him on December 6th and 7th and also monitored him during his confinement in the restrictive housing unit.  The claims under the ADA against Nurse Yvonne are dismissed for failure to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915A(b)(1).

    **C.**    **RLUIPA Claims**

To state a claim under RLUIPA, a plaintiff must demonstrate that the state imposed a substantial burden on the exercise of his religion." *Redd v. Wright*, 597 F.3d 532, 536 (2d Cir.

2010).   The plaintiff has stated plausible claims of violations of his rights under RLUIPA against defendants Bruno, Bibens, Meigs, Lewis, Elder, Bulkanowski, White and Ruggiero. Thus, those claims shall proceed.

## ORDERS

The court enters the following orders:

(1) All claims under the Fifth Amendment, the Eighth Amendment, and all claims under the Due Process Clause of the Fourteenth Amendment are **DISMISSED** against all defendants pursuant to 28 U.S.C. § 1915A(b)(1).  Accordingly, all claims have been dismissed against defendants Yvonne, Kim and Jeanine.  The First Amendment claims, Fourteenth Amendment equal protection claims, and RLUIPA claims shall proceed against defendants Bruno, Bibens, Meigs, Lewis, Elder, Bulkanowski, White and Ruggiero in their individual and official capacities.

(2)     Within fourteen (14) days of this Order, the U.S. Marshals Service shall serve the summons, a copy of the Complaint [doc. #1] and this Order on defendants Bruno, Bibens, Meigs, Lewis, Elder, Bulkanowski, White, Ruggiero in their official capacities by delivering the necessary documents in person to the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141.

(3)     Within fourteen (14) days of this Order, the Clerk shall ascertain from the Department of Correction Office of Legal Affairs the current work address for each of the following defendants: Reverend Anthony Bruno, Director Mike Bibens, Counselor Meigs, Counselor Lewis, Chaplin Mack Elder, Correctional Officer Bulkanowski, Lieutenant White and Lieutenant Ruggiero, and mail waiver of service of process request packets to each defendant in

his or her individual capacity at his or her current work address.  On the thirty-fifth (35th) day after mailing, the Pro Se Office shall report to the court on the status of all waiver requests.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4)     The Clerk shall send a courtesy copy of the complaint and this Order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

(5)     Defendants shall file their response to the complaint, either an answer or motion to dismiss, within seventy (70) days from the date of this order.  If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They may also include any and all additional defenses permitted by the Federal Rules.

(6)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within seven months (210 days) from the date of this order.  Discovery requests need not be filed with the court.

(7)     All motions for summary judgment shall be filed within eight months (240 days) from the date of this order.

(8)     Pursuant to Local Civil Rule 7(a), a non-moving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)     **If the plaintiff changes his address** at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff **MUST notify the court**.  Failure to do so can result in the dismissal of the case.  The plaintiff should write "**PLEASE NOTE MY**

**NEW ADDRESS."** It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, indicate the case numbers in the notification of change of address. The plaintiff should also notify the defendant(s) or the attorney for the defendant(s), if appropriate, of his or her new address.

SO ORDERED at Bridgeport, Connecticut this 7th day of February, 2013.

                                              /s/ Stefan R. Underhill
                                              Stefan R. Underhill
                                              United States District Judge